May it please the Court, I am Brian Wolfman, and I represent appellant Katherine Jones. I'd like to reserve three minutes for rebuttal, if I can. I'm going to address three issues today. That none of Ms. Jones's claims is preempted because the medical device claimed to trigger preemption was not implanted in Ms. Jones and, moreover, not approved for the uses employed in her surgery. Second, that Ms. Jones's claims may go forward under the Parallel Claims Doctrine. And finally, that Ms. Jones's claims regarding Class II medical devices are not preempted under any circumstances. Unless the Court has questions on the topic, we'll rest on our briefs on the pleading issues. Let me turn first to the no preemption issue. Federal preemption is premised on the concept that Federal regulation outs State law, outs conflicting State law. But here there is an absence of relevant regulation because FDA never approved the device implanted in Ms. Jones and never approved infused LT-CAGE for the uses employed in her surgery. Sotomayor, so you're basically arguing that off-label is not regulated. Is that the essence of it? Yes. It is not regulated on the Federal side in this sense. That has – there is a little bit of support for that in the case law, but most cases have rejected that theory. That's correct. And we – let me answer that in two ways, Judge Graber. First, we reject those cases and we think they – those cases mistake both the text and purposes of the law because they are allowing an absence of regulation. So, for instance, here, take this case for example. There was no safety and effectiveness review of an insertion of the biological device without a cage. There was no safety and effectiveness review of this product for lateral or posterior surgery. There was no safety and effectiveness review of a number of other things. Well, there may not have been safety or – and I agree with you. There may not have been, although the warning does say it's only to be inserted with – must be inserted with the cage. But the statute talks about Federal requirements. And there are requirements with respect to off-label use. Perez and Stengel sort of recognize that in our circuit. So in rejecting cases, we're not free to reject the ones that we've already decided. Don't they establish at least that there are Federal requirements with respect to off-label? That'll get to your second argument about parallel – about parallel uses, but parallel requirements. But, for example, the Federal statutes say the manufacturer may not promote off-label uses. So there's a requirement with respect to off-label uses. So why aren't we in preemption land? Well, I think there are two answers to your question, and let me back up a second. There are – there is no question there are requirements of some sort on virtually every device. And so the question, the preemption question, when we're looking for conflict, as the Federal regulation here says, we're looking for a counterpart Federal regulation to the State regulation. Is it on the same relevant matter? And so let's go back and illustrate this through Lohr v. Medtronic. That's a case that found no preemption when a – when a device is approved through a finding of substantial equivalence. There were certainly – that was a device. No one doubted that that HART device was a device. There were also requirements with respect to that device. Well, but there the Supreme Court said it didn't preempt parallel State requirements, right? No, but it – that was its second 9-0 holding. But its first 9-0 holding is that with respect to a product that has not gone through premarket approval, there was no preemption whatsoever. Okay. No, I'm going to go back for a second. Maybe we're talking across each other. With respect to the Class III device that went through premarket approval in this case, don't we have a preemption issue? You have a preemption issue, but there is no – Even though it was used for an off-label – even though it may have been used for an off-label use, don't we still have to find a parallel State and Federal firm? My answer is no. Again, my answer is no, because there was no Federal regulation for – on the relevant topic, the relevant topic being all the many things I just stated that were never subject to PMA requirements. No, I understand your argument. My problem is Perez and Stengel. No, but – We nonetheless do a preemption analysis. Those would be simple cases, would they not, if we simply said they've never been approved for the use for which – to which they were put? With respect, Your Honor, Perez, Stengel, McClellan just don't address this issue, right? Well, no, but I know they don't address it, but – They implicitly do, I guess. Yes, that's my question. I do not think they do. And if you look at the briefs in those cases, you look at the So we should have decided those cases, you say, simply by saying, wow, we don't have to worry about preemption. These are just being used for off-label uses. I would have to review those cases to see if that was correct, and that's where the facts were. Well, that's what you're arguing. That's what you're – assuming that those were off-label uses in those cases, then your position would have been we didn't have to address the preemption issue. No, and here's why. Not necessarily, and here's why. It's not the off-label use so much that untriggers preemption. It's the promotion of off-label uses that cause the causation. Well, but now – That is regulated. That's right. See, that's my problem with it, because there is a regulation that prohibits the promotion of off-label uses. So that, to me, requires us to think about whether the State claim is parallel. Well, one way to view that, one way to view that is to say that one of Ms. Jones's parallel claims is that her – all her State law claims are parallel to the prohibition. Well, and that – but that's your second argument, and it may – it may have more purchase. But I'm focusing on your first argument now, which is that don't worry about 360-KA because these are for unapproved uses. And I'm – it seems to me that that means that we struggled in Perez and Stengel for no reason at all. No. Again, I think not. Those arguments were not presented to the Court, and I'd have to look back at those cases to see if that was a focal point of those cases. But let me just say one other thing. And this, to me, distinguishes this case from all the other cases, including Kaplinger in the Tenth Circuit, which is the only presidential court of appeals opinion on the topic, which is that here, the actual device, the device that is described at 21 CFR 888.8830 was never implanted in my client, right? That's the device with the sponge, the biologic, the titanium cage. That product was just not implanted in my client. So there was just simply no PMA approval for the products that were implanted in her. That – now, just to be clear, that argument doesn't hinge on off-label. That argument hinges on the fact that there's no PMA approval. So if you believe the – Well, the – the infused graph was approved, correct? Well, with respect – I understand. I understand that it consists of a cage and the graph. Correct. And that is important. And this is – But no, just – I want to make sure I understand the facts correctly. Right. The graph itself was approved. The facts, correct. And the graph was approved to be used in conjunction with a titanium cage, as I recall. A titanium cage, that is correct. Now – So why shouldn't we treat the entire device that was approved as the graph and the titanium cage? Well, that is – that is our position. And if you – if there is – that device received PMA, but that's not the product implanted in our client. So that – that takes me to the question that maybe goes to your second thing. Are you making a claim in this case that your client suffered damage because the polymer cage was used rather than the titanium cage? Well, that's one of her arguments. Well, but tell me what – I know it's one of the arguments. I'm not sure I understand the claim. Well – Is it – I understand the claim that when the graph is implanted without a cage, we've got a problem. In other words, because the label says it must be done with the cage. Is there a separate argument here that there's something – that your client suffered some damage from the fact that the cage that was used was polymer rather than titanium? Right. These are Class II products, which don't trigger preemption. I'm not sure what I'm asking. It's not the question. The question is a factual question about the nature of the injury that's created. Right. And so that – let me go through that. These are references to the – to the SER. 677, the polymer cages were used. She was harmed by the peak cages. That's at page 690. She says that one of the reasons she was harmed is that the peak cages migrated. That's at 711. If you look at her opposition to the motion to dismiss, at 429-30, she says the cages malfunctioned and caused resorption and pain. Resorption is a dispersion of the bone. Okay. So if it were the – So is the factual claim that had the titanium cage been used, it would not have migrated, is that the factual nature of the claim? That may be, ultimately. I mean, there has been no discovery in this case. But it matters because if it's – if any cage would have migrated, then the fact that it was not titanium is not relevant. So that's why I'm – That is correct. And that maybe is to dispute at trial, but I don't think we have to plead with that level of particularity. Well, see, but when I read the pleadings, given – and I know they're pro se pleadings, so we have a difficulty here. But it seems to me that the argument was that a cage – that the cage, polymer cage, was implanted without the graft and therefore migrated. Isn't it – wasn't that the factual argument? Well, that is a possibility, but let me – No, no, no. I'm asking what the – what the allegation was, not the – The allegation is multiple-fold there because there were three surgeries. In one surgery, in two of the surgeries, the polymer was implanted with the non-PMA polymer cage. And in the last surgery, the polymer was implanted without any cage at all. Right. And it's – and as I read the complaint, it's the migration of that polymer cage that your client complains of. Well, again, in the third surgery, there was no cage at all. Right. So my question is, is there an allegation that a polymer cage implanted with the infused graft migrated? Yes. And the migration is noted at 7-11 of the SER. And that's one that was implanted with the graft? Correct. There was always – there was always the biological material. It's just that in one surgery, there was biological material alone with no cage. So – So I have one more question about the – about the factual allegations. As I read these yesterday, it appeared to me that there was not a claim of improper manufacture, that is, that the devices themselves were defective just looking at them before they – rather that something went wrong once they were implanted. Is that a correct understanding of the complaint? I – that would – let me answer it this way, and I hesitate to give – and I want to explain why. I hesitate to give a definitive answer. These are pro se pleadings. And there's no question that if you read – But we have to understand what they say. Yes. And I want to answer your question. But I wanted to preface this with that remark, because if you look at the complaint in the SER as I did, I took it principally as a claim of defect, design defect. However, there's – But not as – I did, too, but not as manufacturing defect. Yes, but there may be some confusion in the mind of the pro se litigant, because if you look at the opposition to the motion to dismiss, she does – she does claim there. And recall, at that time, she had also asked to amend her complaint. There is an allegation there in the opposition to the motion to dismiss. Well, whether or not there's an allegation, the pro se client is now represented. So I guess my question is, do you seek leave to amend to assert a manufacturing defect? Yes. In addition to – and let me explain why. Because what the – what the opposition to the motion to dismiss said is that in addition to the design claims, that the product malfunctioned. And typically, a product malfunction is a failure of the – Well – And I think she should have an opportunity to – I thought it was an allegation, though, that it was misused by the physicians that – and that it migrated rather than that it – and you're saying that it's possible that it migrated because it was manufactured improperly as opposed to inserted improperly? That it was defectively designed or defectively manufactured. And that's what's said in the opposition to the motion to dismiss. Now, that's the – Well, in my view, those are very different. I think that – They are different, but they're not mutually exclusive. No, no, I understand that. I know you want to save some time, but I want to focus for a second on the parallel claims issue. Let's assume you're in parallel claims land, that we don't buy the argument that preemption doesn't apply. Stengel, at least, suggests that the failure to report untoward results with the device to the FDA can give rise to an Arizona negligent failure to warn claim. So I guess you have the same question. Is that one of the claims you'd like to assert? That is one of the claims she would make on remand. I mean, a lot has happened since then. Okay. So let me just go forward. But there are other parallel claims. Yeah, that's why I want to ask you about those, because Stengel at least resolves that issue. Tell me what the other parallel claims are. Which Federal requirement was violated, and which Arizona law you think is parallel? Okay. There is misbranding, and misbranding is the — this is on the Federal side now — is that the labeling is false or misleading in any particular. That's at 352, Title 21 U.S.C. 352. But you really don't have a claim. Isn't that preemptive? The labeling in this case — No, but let me — I mean, you have an advertising claim, right? You have a claim that they promoted it in some way. Let me finish the thought, if you might. I mean, I don't mean to interrupt. But at 352 is the claim — is the provision of Federal law that says labeling must be — may not be false or misleading in any particular. But at 352Q, labeling includes promotion and overdose. Well, that's what I was getting to. And I want you to focus on that, because you're not attacking the label. Exactly right. We are not attacking this label. I mean, if the label was fine — That claim is preemptive. Yes. Not only preemptive, but the label is fine. The argument here, the argument here is that the promotion, the unlawful promotion overrode the label. Well, I'm — It nullified the labeling. I understand your argument. I'm trying to focus on what you think the Parallel Arizona claim is. Well, the Parallel Arizona claim takes essentially two forms. One is the common law notion that part of the duty to warn, and you see this in the Watts opinion of the Arizona Supreme Court 2016 opinion. Part of that duty is the duty not to nullify warnings. That's exactly what that case is about. It's a situation where there was a label, and the manufacturer is accused of using other promotional materials to override the label. Well, see, my difficulty with that is this. The label — the label doesn't — there's nothing that overrides the label in your alleged promotion. The label simply says, when used for on-label use, here are your instructions. There's nothing that — there's nothing in the alleged promotion that says, ignore the label. That's right.  But how does it nullify the label? It nullifies it because the promotion to doctors — this is very similar to the Arizona case, Watts. You were asking about the Parallel Arizona claim. Right, right, yeah. The promotions — and this is heavily alleged in her pro se complaint. The promotions were counter to the label, and so, for instance, they promoted — Right? There's something that says you can't promote off-label uses at all, but it's hard to see an Arizona parallel to the violation of that Federal statute. Oh, no, but I think, with all respect, I think that's exactly what Watt does. And one other thing that was parallel — remember, I said two things were parallel on the State law side of the equation. One is a case like Watt that buys the nullification argument wholesale. And the second is that the Arizona Pharmacy Act has the — A private cause of action under the Arizona Pharmacy Act? There is not, but it would be negligent per se. But now you're back in Buckman land, aren't you? No, I think — I think absolutely not. This is not an interference with the inner workings of the FDA. This is not fraud on the FDA. This is fraud on the doctors and the public. Any Arizona case finding a private cause of action or negligence per se under the Arizona Pharmacy Act? There is no such act — case one way or the other. But there — we cite these in our brief, and I'm happy to cite others. But there is a line of Arizona authority. I'm sort of familiar with Arizona law. I know you're familiar with that. So there's a line of Arizona — I appreciate that, Your Honor. There's a line of Arizona authority that allows a public safety statute to act as negligence per se. And the Arizona Pharmacy Act — I want to finish this thought and then see if I can save some time. Well, you're out — you're out of time, but I will give you some rebuttal time. Right. But the Arizona Pharmacy Act is virtually verbatim the misbranding provision of the Federal law. So that is about as parallel as one can get. Your Honor, if Your Honor has no further questions, I will hopefully get some rebuttal time. Yes. We'll give you two minutes for rebuttal when the time comes. Mr. King. May it please the Court. Kenneth King for Defendant Apolli Medtronic. Your Honor, I intend today to cover two principal points in my argument, subject, of course, to any questions the Court may have. The first point is that the claims here are that the device manufacturer should do more than the FDA requires. And dismissal here is consistent with the Court's holdings in Stengel and in Perez and other circuits as well. The second point is that the trial court below was absolutely correct in stating and in that repleading, allowing the plaintiff to replead here would be futile. Well, wait. I have a question about the second point, if I may. Counsel has suggested that they would like an opportunity to plead a manufacturing defect as distinct from a design defect. And it would appear to me that a manufacturing defect claim would not be preempted. That is, assuming everything is the design of the device is perfect per the Federal government, if you make it so that it breaks instead of holding steady, then that's an available claim. Is it your position that that is not an available claim? That is, that it would be preempted? I'd have to see it first. Well, I'm asking in theory whether a manufacturing defect claim, in your view, is preempted. In theory, manufacturing defect claims can withstand preemption. Okay. So we don't know if with discovery that is viable, but in theory it could be. Hypothetically, yes. Okay. So let me ask you a less hypothetical one. And the Stengel case is unfortunately named because it's what you'd rather call it better than Medtronic, I suppose. So in Stengel, we said there is an Arizona parallel claim to the FDA requirement that you report, let me call them untoward results, for use of the device to the FDA. And Mr. Wolfman says that's a claim that we – that my client intended to assert and we intend to assert in an amended complaint. That surely would survive preemption, would it not? In other words, if Ms. Jones were to allege that after approval, bad results were obtained with the device and with the cage, and that you failed to report those bad results, your client failed to report those bad results to the FDA, Stengel would seem to be on all fours, wouldn't it?  Oh, sure. But we're at – and they may not be able to allege it. There may be Rule 11 problems with it. That's not the question. The question is whether or not such an amendment – such a claim, if asserted in an amended complaint, would survive preemption. And our case law says it would. Certainly, in Stengel, the Court found that the company had a requirement to submit FDA – And I have no idea whether that's true in this case. And, frankly, we had no idea whether it was true in Stengel either, because we're at the pleading stage. So – but I'm having difficulty figuring out why it would be futile to allow a chance to amend to say those things. Now represented by counsel, Ms. Jones may not find any basis for making that allegation. Counsel would be subject to Rule 11 problems, et cetera. But certainly it's an allegation that would survive a preemption. Sure. And just to correct Your Honor, she – the genesis of this case was filed in Supreme Court California when she did have counsel, and they never asserted this claim. That's the malpractice case. No. Okay. I'm sorry. I understand what you're saying. Yeah. Right. But that one would survive if alleged, right? It would be – we've already said those are parallel claims. And before it was transferred from California to Arizona, there was no opportunity to amend, right? Because as she was told, you need to go file your claims in Arizona. Right. And she – in the meantime, her counsel moved to be relieved. Right. And she filed the claim in Arizona. And – But it sounds like you are conceding that at the pleading stage, if she asserts a manufacturing defect claim, it's not necessarily preempted. Obviously, subject to some discovery and maybe some redressant motion, that's another day. Correct? Hypothetically, one could exist. Okay. So now let's focus on the – so we have a manufacturing defect claim that could hypothetically exist, what I call a Stengel claim that could hypothetically exist, because Stengel deals with Arizona law, so we know there's a parallel Arizona claim. Mr. Wolfman says, I've also got a false advertising claim, a misbranding claim, and there's a parallel Arizona statute there, too. And I'm assuming, for all the purposes of all these questions, that we're trying to deal with 360KA, that you're in – this is a preemption analysis. Why wouldn't that survive? Because the complaint does not allege misbranding. No, I understand the complaint is terrible. It was done by a pro se litigant. We're dealing here with the question of whether or not amendment would be futile, which is what the – your – the second part of your argument, what the district court said was, I'm dismissing it and I can't find anything here. I tend to agree with the district court on that. Reading the complaint charitably, I'm not sure what it says. But now we have counsel, and he says what we'd like to do is amend the complaint consistent with responses below and other things to say – to allege that kind of claim. Assuming that he did, would that survive a preemption analysis? To the extent that the misbranding claim is stating that our warning is inadequate or should be changed, it would not survive. No, that's not – as I understand – because that's why I tried to cut Mr. Wolfman off before, and he agreed with me, I think. His misbranding claim, I take it, is that you promoted off-label uses, advertised, if you will, in a fashion you knew to be misleading or inappropriate. And that, he says, has a parallel in Arizona law and the Pharmacy Act and perhaps under Arizona common law. So assuming that's what his allegation was, would that survive preemption analysis? I – again, I have trouble because it's not alleged, but I realize you say that. No, I understand. You're giving me that. You started by saying it would be futile to amend. And so my question is, if he were to amend or Ms. Jones were to amend to say you violated the false advertising prohibition, if you will, of federal law and there's a parallel Arizona provision that prohibits that, under which you would be liable, would that survive preemption? Misbranding includes advertising under the regulations, and advertising includes promotion. But a duty to refrain from off-label promotion is not parallel to a duty to work. No, that's not what I'm – maybe we're missing each other. I agree that there may not be a parallel in Arizona law to the duty to refrain from off-label promotion. But he's suggesting more that your off-label promotion was false and misleading. And if it was, would that survive a preemption analysis? It – the plaintiff here has alleged fraud by omission. Right. If it's something other than that – I don't think that's a problem. I mean, I agree with you under fraud by omission. If it's – I'm asking a different question. If it's something other than that, hypothetically, Perez gives us some guidance because Perez says that under at least the facts of Perez, there might be instances where a fraud claim could survive. And we're in this circuit, and I have no – Right. And in the Houston case, Judge Wilson says, hypothetically, although applying California law, not Arizona law, a fraud claim might survive. And the reason we're putting you on the spot on this stuff is that we have a pro se complaint. And now we have counsel, and counsel says, I can fix it. And it was dismissed without leave to amend. And so that's why we're asking you all these hypotheticals. Sure. I mean, and on the Stengel claim, the reason I have so much difficulty and I realize we're – You think there's no factual basis for it. Right. In fact, I couldn't – And you might be able to get summary judgment and sanctions and have people drawn up on lampposts if somebody makes the allegation. This is the first we've heard of it. Not part of the record is the fact that the FDA looked at this in response to an inquiry by Senator Franken and said none of these adverse reports would change anything. Even though it's not part of the record, you made it aware of – you made us aware of it in your briefs. But on the other hand, the other side did cite Stengel in its briefing and said that that showed why they might have a claim. I'm looking for a different proposition to justify parallel claims based upon the purported claims of off-label promotion in the complaint, which are not off-label promotion claims at all. You know, we have – we realize it's a pro se plaintiff, but the complaint is what we have to go by, and that's how we brief the case. No, and that's why we both, I think, asked the question about your second point, which is that the judge correctly held that it would be futile to amend. I'm sympathetic to your view that on the face of this complaint it's difficult to discern the way around preemption, but it's pro se and you correctly focus on whether or not it could be amended. And let me discuss point two first, since we're on that track. This complaint is unique in some respects, but one respect is that she attached her medical records, or at least the significant ones, to the complaint, as well as the state court complaint, in which she describes her medical records in great detail. There is no plausible way that this plaintiff can plead reliance or the elements of fraud in this case. Well, and that goes to the Parallel Arizona claim, I take it. In other words, what you're saying is that even if there were misbranding, to use the shorthand, the Parallel Arizona claim requires reliance on the – Correct. And I think that's right, both under the Consumer Fraud Act and common law fraud in Arizona. But is it true of a Pharmacy Act claim? If there are Pharmacy Act claims. Is there a Pharmacy Act claim? I think there is, and I don't – First time I've heard of one. I don't think there's a right of private action under the Pharmacy Act. But if you were dealing with a fraud claim under Arizona law, then you would have to show reliance. Sure. And I don't think she can. She's had – she investigated her facts with this doctor extensively, had extensive back and forth with the doctor. No. And I understand the argument. My question is, is that a – is that a Rule 12b-6 issue, or is that a summary judgment issue? I think it's a Rule 12b-6 issue. What if she were to allege reliance? Well – I mean, she might – again, it might be sanctionable to allege reliance. Well, and also I think Twombly and Iqbal say you just can't say he relied or he or she relied. You have to have some basis for it. Just using the so-called magic words does not get them there. Under Arizona law – and I express no opinion on this. I used to. Is it – can you have fraud if someone else relies on a misrepresentation and then it affects as to you this is a safe product? In other words, her allegation, I take it, is that somehow the doctors were misled and, therefore, if they hadn't been misled, she might not – they might not have used the devices the way they did. Does that state a claim for fraud under Arizona law? I don't think so, and the records show the doctor was not misled. If one looks at – if the court would look at records, supplemental record page 782, there's a letter written by the doctor in 2012 to the plaintiff. She had asked him a series of questions about Infuse, and he responded, and he states that as a reason for his use of the device here, quote, I have personally used Infuse in my spinal surgeries without any complications for over seven years, including my fellowship at NYU in New York. To this day, I continue to use the product because of its effectiveness in bone healing after surgery. So there's no – What does that tell me about whether or not the doctor relied on promotion by Medtronic? It just simply says he thinks it's safe. Well, it also says he's used it for seven years. But that doesn't mean he didn't rely. I'm sorry, go ahead. Aren't you really getting into a merits-based argument? And this is, as you said, at the pleading stage. So you're asking a pro se plaintiff at the pleading stage to get into very intricate points factually and legally on reliance and other issues that, again, I'm just wondering whether or not, now with counsel, your argument about fertility and the district court's finding of fertility might need some further reconsideration. She still has to have some basis to plead her case. Right. And you referred to the voluminous medical records that she attached, which becomes part of the pleadings under our federal rules. But I'm just wondering whether or not you're asking a pro se plaintiff to discern those extensive medical records to come up with, I'll use the word correct, factual and legal allegations. First of all, she's attached them. Second of all, she claims in her complaint to have a medical consultant. And third of all, she still has to plead some element of reliance. And you referred to the doctor's statement as saying that, okay, well, he relied upon the manufacturer's representations, he used it successfully in that regard. He doesn't say relied on the manufacturer. He relies on his experience with the product over seven years, including his fellowship. That's not relevant, really, in a sense, to the question whether he also relied or initially relied on representations from the manufacturer. In other words, if I say, well, I really enjoyed reading this novel, it doesn't say anything about whether I relied on someone else's opinion to pick it up in the first place. And so I guess I don't understand the relevance. And hypothetical, Judge Graber, if he had used it in year one and then in years two through seven continued to use it based on his own experience. You're saying the reliance passes out of the picture. There's a huge causation problem, approximate cause problem. And there's no inkling that what you are hypothesizing about happened. She still has to. But it doesn't negate it either. I guess you had said, well, this proves that they didn't rely, but I guess I don't really see that. I didn't say proves. I said it shows that she plausibly can't plead reliance. She has extensive medical records at her disposal, including this letter. She hasn't come up with a basis after all these years, including when she was represented by counsel, to show any element of reliance. Here's what strikes me about this entire discussion that we've had with both of you. It sounds to me as if, in theory, in the abstract, there are a handful of claims that would not be preempted if they could be pleaded. And the question whether they can, in fact, be pleaded in good faith remains unknown. It strikes me that we don't know. So that even if the plaintiff were given an opportunity with counsel, counsel may discover that there is not a factual basis to allow the repleading, but he might. I guess that's what I'm struggling with, is what do we do in that situation? I don't think a reliance claim could be pleaded in good faith, because there's just absolutely no basis for it. They still have to plead it. I understand that. I guess what I'm struggling with in general is the idea that there are theoretically some things that could be pleaded, but we don't actually know if they can. And, again, on this so-called Stengel cause of action, first time raised, as I was sitting here, I know they cited the case, but for a different proposition. Well, and they may not be able to plead it. But if they pleaded it, we know it would survive a preemption analysis. My en banc – I'm not – My en banc – You may think it might not survive it in the Supreme Court, but it would survive it here. Well, given the facts and as we know them, I'm not sure that's the case. Okay. Well, let me ask the – let me step out of the details for a second and just make sure I understand your position, because I think on 360-KA preemption, because I understand your position is that there are requirements with respect to the off-label use of this device, and, therefore, we have to satisfy the parallel requirements claim, right? Definitely. Okay. So let me just give you a hypothetical, and you don't have to tell me it's not true, because it's not true. Let's assume that your client knows that any use of this device off-label is very dangerous to patients. They have information to that effect. And they nonetheless promote the off-label use of that device. Would there be a state law cause of action against your client? You're not talking preemption as to whether a fraud claim – Well, no. Would there be a state law cause of action that survived – thank you for correcting my question – that survived preemption analysis against your client? I don't know. What I will say is Perez gives us guidance to say that, hypothetically, there are Yeah, and I don't know what the state law claims are, so I'm not trying to focus on the nature of the state law claims. We'd have to find a parallel one. But if there were a parallel claim to the misbranding prohibition in Federal law, would that survive preemption analysis? You're talking a fraud claim. Well, I don't know whether it's fraud. In other words, maybe – let's assume the Arizona pharmacy law said misbranding is illegal and any person who buys a misbranded device has a private cause of action. Under the Pharmacy Act. Pharmacy Act. Whatever act. I don't think there's private right of action under that. I know. I'm asking you to assume that under state law, in the absence of preemption, the fact situation I described to you would give rise to a cause of action. My question is, under those circumstances, would we be outside of preemption? If there is a fraud claim under Arizona law. You keep saying fraud and I keep saying misbranding. So let's assume that under state law, something that violates the Federal misbranding prohibition also would give rise to a cause of action. Also violate some Arizona. Whatever. I'm making up a law. I'm trying to find out your theoretical position. Can misbranding give rise to a state law cause of action that's not preempted? If there is a state law cause of action exists for that circumstance? I don't. I don't think so. Why not? The reason I don't think so. Why wouldn't that be parallel? Once we're outside the fraud. See, but you keep trying to put it in the fraud box. Let me see if I can restate it. Yeah. Federal law says you cannot promote off-label uses. If your client does promote off-label uses, that violates Federal law, and if there is an identical Arizona law that says you can't promote off-label uses and if you do, you can sue, would that be parallel and therefore permitted? If the laws are identical, it could. Okay. So now let's go back to my question. There's a Federal statute that says you may not misbrand. Let's assume there's an Arizona statute that says you may not misbrand that gives rise to a private cause of action if you're damaged by the misbranding. Put aside whether or not Ms. Jones ever saw the misbranding or relied or whatever, she might lose under the Arizona statute. Under, isn't that a parallel statute also? Here's why I hesitate. Because misbranding, as you've defined it, speaks to the product. I'm not talking about the label. I'm talking about promotion. Promotion that's in. That's why I use a different. Her hypothetical is better, but mine goes through. What I worry about her hypothetical is that in that case you're really enforcing the Federal law and you've got a Buckman problem. That's why I'm focusing on a different one. I have a problem because I don't think you can divorce all this from the labeling. See, he's not complaining about the label. He says the label is fine. He's not even saying you need to make additional disclosures, at least as I interpret the argument. The argument is that you actually said something to doctors and what you said to doctors about off-label use was incorrect and therefore violated the Federal prohibition on false advertising. Not simply that you made off-label promotion, but that you made an incorrect off-label promotion. And when I say you, of course I mean Medtronic, not the lawyers. I'm not sure they can allege that. I'm not sure they can prove it. But I'm in hypothetical land. If one were to say that, then it seems to me, and one could identify a way of rise to liability under those circumstances, then I'm having a hard time seeing why that cause of action would be preempted. So that's my question. Do you agree? I think I'd respond in the way I responded to Judge Graber. If you can find identical requirements, then you have a parallel claim. But they must be identical. What must they be? Because Stengel deals with a requirement that you report bad results. And it finds the parallel Arizona law to be a failure to warn negligence claim. They're not identical, are they? The law says identical. I know. Stengel may be wrong. Stengel may be wrong. Let's assume that I have to follow my colleagues for the moment. And other cases cited in this circuit have used genuinely equivalent, which is the same. So I just go back to how I answered. And that's why I resisted your fraud analysis, because fraud has a whole bunch of other elements that the federal statute doesn't have. Correct. And that's why the claims need to be identical. I don't necessarily think Stengel overruled or disputes what the law said. But it says that failure to warn under Arizona law is close enough for government work. Well, it said they were parallel claims. Thank you, counsel. We appreciate your arguments and your answers to our questions. Mr. Wolfman, you may have two minutes for rebuttal. Thank you, Your Honors. I just want to take up briefly the discussion you've just been having. I realize this is a pro se complaint, and it takes some time to go through it. But not only does Ms. Jones want to replete, she says that in her lower court papers, but the claim of overpromotion is extensively discussed in her complaint. And if she — Is overpromotion a violation of Federal law? Overpromotion, I'm just meaning to say the advertising. The promotion of impermissible promotion because it's at odds with the label, the misbranding type argument. But if you take a look at — she says that her particular surgeons were linked to Medtronic's websites and vice versa, that Medtronic was recommending them, they were recommending him. If you looked at those websites, you saw the off-label uses promoted. Medtronic representatives were in the surgery room. She — this is at 678-79. Take a look also at 701 through 703. Eighty-five percent of all surgeries were performed off-label. That's at 687. And then she makes the ultimate conclusion that it would be impossible for any of these surgeons not to have gotten these promotions. So I prefer to think of this not so much as a question of reliance, which I don't believe is required under the Consumer Fraud Act. However — Roberts, not required under the Consumer Fraud Act for enforcement by the Attorney General, but for private causes of action, the Arizona supreme court says it's required. But — but I — I think the question here, I don't want to dodge this because I don't think it's a question of reliance. I think it's a question of causation. And it is true that ultimately, and the Court said this in Stengel with respect to the failure-to-report type claim, that ultimately you have to show that it caused this injury. So I think it's just a neater way to resolve the problem of reliance to say, yes, there has to be causation. In other words, what I'm calling overpromotion or the impermissible advertising has to have ultimately caused the injuries. But I think that's reasonably well pleaded in her — in her complaint. The fact-intensive — fact-intensive inquiry, causation issues, and at the pleading stage, as I understand your argument, you believe she's been given that opportunity. Right. She should be given an opportunity to replead, but I do want just two more things. I realize I've blown through my time. That — but that — take — I know you've done it already, but take a hard look at the complaint. For a pro se person, there's an awful lot of detail. And the final point I want to make that's relevant here is a legal point. Medtronic in its papers cites Twombly and Ekbal. But the argument they're making is not a Twombly-Ekbal argument. They're making an argument about the need for much more fact pleading. But we're in a notice-pleading situation. She did way more than that. Twombly and Ekbal are about plausibility. And this is — if you look at those pages that I've cited to you, this is easily a plausible claim in — in light of all the circumstances, all the pleadings in her complaint, and all the attachments to her complaint. Roberts. Can I ask one more question? Yes. And I meant to ask Mr. King this, too. So perhaps the parties ought to address it in a 20 — in whatever our number is. Twenty-eight. Twenty-eight, yeah. The Supreme Court has granted cert in the Merck case. I know that doesn't deal with devices. It deals with drugs. But it deals with a failure-to-warn allegation. I think it's fair to say we never know what the Supreme Court will say when it takes a case. Should we await guidance from the Supreme Court in the Merck case before we decide this one? And because it's not the case. I'm happy to respond to that now, and I can also do the 28th. And, of course, I have my opposing counsel to respond as well, of course. That — the question in that case of a — The question is different. I can distinguish the case. Right. But I think it's sufficiently different. And just so I want to make sure I'm on the same page with you, which is that the question there is what is meant — a follow-on to the Wyeth case — what is meant on the test for impossibility of preemption with respect to drugs? No, no. Look, I understand the case is quite distinguishable. Right. My fear, question, trepidation, is that the Supreme Court often takes a case to make a statement about something. And it's going to be making a statement about preemption under the MDA in that case because it has to. That's the issue. With all respect, it's not — it's not a device case. So — No, it's not. But it's a failure — it's a failure-to-warn case. And the question that they've asked is whether a State law failure-to-warn claim is preempted after the FDA rejects a proposal to warn. And so it seems to me at least inferentially related to Stengel, possibly. And given the new composition of the Court, perhaps there will be a broad statement about preemption in this general area. That's the concern. That is possible. But let me just say this, and I'm — again, I don't want to belabor the point. I think all the parties in the case in their cert — in their cert papers noted that the issue there is quite narrow. It's when — when — when one assumes that the manufacturer has gone to the agency and said, give me this new label, and they say no. Correct. And that's true. Right. And then so everybody agrees that it's a narrow application of Wyeth and that Wyeth, again, about drugs, generally does not preempt drug-oriented claims. I guess I'd invite Medtronic to file a 20-AJ on this and let us know what their views are. Okay. Thank you. We appreciate the arguments of both counsel. Did you want to just say yea or nay at this point, or — Okay. You can do it, 20-AJ. The case just argued then is submitted, and we appreciate very much the helpful and thoughtful arguments from both counsel.
judges: Graber, Hurwitz, Lemelle